IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARVIN RAGSDALE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 21-1167 |
| JLM CONSTRUCTION SERVICES, INC. | § § § | |
| Defendant. | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

### I.  Introduction

1. Marvin Ragsdale brings this citizen suit against JLM Construction Services, Inc. ("JLM" or "Defendant"), under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq., also known as the Clean Water Act ("CWA" or "Act"). Mr. Ragsdale asks this Court to enter declaratory and injunctive relief, civil penalties, and other relief to correct Defendant's recurring, unauthorized discharges of polluted stormwater from the Reagan Ridge RV Park construction site onto Mr. Ragsdale's property. *See* 33 U.S.C. § 1365(a)(1).

### II.  Jurisdiction & Venue

2. This Court has subject matter jurisdiction over this action under 28 U.S.C § 1331 (federal question) and 33 U.S.C. § 1365(a) (CWA citizen suit to enforce effluent standards or limitations). The relief requested is authorized by 28 U.S.C. §§ 2201 and 2202 (further necessary or proper relief based on a declaratory judgment), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

3. Venue is proper under 28 U.S.C. § 1391(b)(1), (2) and 33 U.S.C. § 1365(c), because the RV Park construction site and Defendant's unauthorized discharges all are located in and have

occurred in Williamson County, Texas, which is within the Austin Division of the Western District of Texas.

### III.   Notice

4.     Mr. Ragsdale has complied with the CWA's statutory notice requirements. See 33 U.S.C. § 1365(b)(1)(A). On August 27, 2021, in a letter sent by certified mail to David Marshall, President and registered agent of JLM, and to the mailing address for JLM provided in the stormwater permit, Mr. Ragsdale gave JLM notice of the violations identified in this complaint and of its intent to file suit after 60 days should those violations continue. A true and correct copy of the notice letter, with documentation of its postmark and receipt, is attached as **Exhibit 1**.

5.     Mr. Ragsdale also mailed a copy of the notice letter by certified mail to the Administrator of the EPA, the Regional Administrator for EPA Region 6, the U.S. Department of Justice, the State of Texas through the Texas Attorney General, and the Executive Director of Texas Commission on Environmental Quality ("TCEQ").

6.     Sixty days have passed since Mr. Ragsdale served JLM and federal and state agencies with notice of its intent to sue for the violations described in this complaint.

7.     Neither the EPA nor the State has commenced or is diligently prosecuting an action to redress the violations described in Mr. Ragsdale's notice letter and alleged in this complaint.

8.     The violations identified in the notice letter are continuing at this time and are reasonably likely to continue in the future.

### IV.   Parties

*Plaintiff Marvin Ragsdale*

9.     Plaintiff Marvin Ragsdale lives on a ranch at 1830 County Road 289, Georgetown, Texas, 78633. Mr. Ragsdale's property is located directly across County Road 289 from the RV Park construction site, which is located on the corner of County Road 289 and Ronald Reagan Blvd.

10.     Sediment-laden stormwater has escaped from the RV Park construction site and sediment from the RV Park has accumulated on Mr. Ragsdale's property, including in his pastures and his stock tank. Mr. Ragsdale's property has been and will continue to be affected by Defendants' ongoing violations of the stormwater permit.

11.     The relief sought by this complaint will redress the harms to Mr. Ragsdale caused by Defendant's unlawful discharges. Mr. Ragsdale's injuries are unlikely to be redressed except by an order from this Court requiring Defendant to take immediate and substantial action to stop the unpermitted discharges and flow of pollutants off the construction site, to remove accumulations of sediment and debris on Mr. Ragsdale's property that have escaped the construction site, and to comply with other relief that this Court deems necessary.

12.     If successful, this action also will result in civil penalties that will deter future violations that would threaten Mr. Ragsdale's use and enjoyment of his property and the areas and waters adjacent to and downstream from the location where Defendant's violations have occurred.

13.     Mr. Ragsdale suffers actual, concrete injuries that are fairly traceable to Defendant's violations and are redressable by this Court. Mr. Ragsdale has no other adequate remedy at law.

### *Defendant JLM Construction Services, Inc.*

14.     JLM is the general contractor and the primary operator overseeing construction of the Reagan Ridge RV Park, located at the corner of Ronald Reagan Blvd and County Road 289 in Georgetown, Texas. The RV Park construction site is physically located at 26690 Ronald Reagan Blvd, Georgetown, Texas 78633 within the Edwards Aquifer Contributing Zone.

15.     JLM is a for-profit corporation, and is therefore, a "person" under CWA section 502(5), 33 U.S.C. § 1362(5) and subject to citizen suit enforcement under the CWA. *See* 33 U.S.C. § 1365(a)(1).

16.     JLM's registered agent is listed as David Marshall, whose mailing address is 11700 Fast Horse Drive, Austin, Texas 75759.

## V.     Legal Background

### *The Clean Water Act*

17.     Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  To achieve this goal, the Act prohibits "the discharge of any pollutant" into navigable waters, except as authorized by the CWA. 33 U.S.C. § 1311(a).

18.     The CWA establishes the National Pollutant Discharge Elimination System ("NPDES") under which the Administrator of the EPA or an authorized State can issue NPDES permits, which allow the lawful discharge of pollutants subject to certain conditions. 33 U.S.C. § 1342. In Texas, the TCEQ has the authority to issue NPDES permits through the Texas Pollutant Discharge Elimination System ("TPDES") permitting program.

19.     TPDES permits impose limitations on the discharge of pollutants and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters. Each violation of a TPDES permit violates the CWA and is grounds for enforcement action. 33 U.S.C. §§ 1311(a), 1365(f).

20.     The holder of a TPDES permit is subject to both federal and state enforcement action for failure to comply with the limitations imposed in the permit. 33 U.S.C. §§ 1319, 1342.

21.     Clean Water Act section 402(p) (33 U.S.C. § 1342(p)) requires permits for stormwater discharges from either industrial or municipal activities. The EPA has implemented this requirement by the promulgation of 40 Code of Federal Regulations, Section 122.26. A stormwater discharge associated with industrial activity is defined to include "[c]onstruction activity including

clearing, grading and excavation," except activity that results in the disturbance of less than five acres. 40 C.F.R. § 122.26(b)(14)(x).

22. The EPA and states may issue a "general permit" to cover one or more categories or subcategories of discharges or facilities within a geographic area. 40 C.F. R. § 122.28(a). In Texas, the TCEQ has issued a general permit under the TPDES program to authorize stormwater discharges associated with construction activities, through permit number TXR150000. Sources seeking coverage under this general construction permit are generally only required to submit a "notice of intent" to TCEQ, in order to be authorized to discharge pursuant to the terms of the general permit.

23. Each violation of the TPDES general construction permit is a violation of the Clean Water Act and grounds for enforcement. *See* 33 U.S.C. §§ 1311(a)(the discharge of any pollutant by any person shall be unlawful, except as in compliance with the Act, including the requirements of section 1342 regarding TPDES permits); *see also* 33 U.S.C. § 1365 (authorizing citizen suits against any person in violation of a permit or condition of a permit issued under section 1342).

*Citizen Enforcement*

24. The CWA authorizes any citizen to file a civil action to against any person who is in violation of an "effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). The CWA defines an "effluent standard or limitation under this chapter" to mean, among other things, "a permit or condition of a permit issued under section 1342 of this title that is in effect under this chapter." 33 U.S.C. § 1365(f)(7).

25. The CWA subjects citizen suits to two limitations. 33 U.S.C. § 1365(b). First, sixty days before filing a citizen suit, the citizen must give notice of the violation to the alleged violator, the EPA, and the State in which the violation occurs. 33 U.S.C. § 1365(b)(1)(A). Sixty days after

giving notice, citizens may bring an action in federal district court to enforce any ongoing violations of the CWA. The purpose of providing notice to the alleged violator is "to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987).

26. Second, the Act bars a citizen suit if the EPA or State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B).

27. Where, as here, the EPA or State fails to act within the sixty-day notice period, a citizen suit is appropriate. *See Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008) ("The citizen-suit provision is a critical component of the CWA's enforcement scheme, as it 'permit[s] citizens to abate pollution when the government cannot or will not command compliance.'") (alteration in original).

28. CWA section 505, 33 U.S.C. § 1365, empowers citizens to seek remedies for unpermitted discharges violating Section 301 of the CWA, 33 U.S.C. § 1311, and for violations of NPDES permit conditions. This section also authorizes citizens to seek injunctive relief.

29. For violations occurring after November 2, 2015, where penalties are assessed after December 23, 2020, each separate violation of the CWA subjects the violator to a penalty of up to $56,460 per day per violation, pursuant to sections 309(d) and 505(a) of the CWA. 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. § 19.4 (2009) (Adjustment of Civil Monetary Penalties for Inflation). Section 505(d) of the CWA, 33 U.S.C. § 1365(d), allows prevailing or substantially prevailing parties to recover litigation costs, including attorney fees and expert witness fees.

### VI. Facts

30. Mr. Ragsdale fully incorporates **Exhibit 1**, including all attachments to **Exhibit 1**, into this complaint.

31. JLM Construction Services Inc. is the general contractor and the primary operator overseeing construction of the Reagan Ridge RV Park, located at the corner of Ronald Reagan Blvd and County Road 289 in Georgetown, Texas. The RV Park construction site is physically located at 26690 Ronald Reagan Blvd, Georgetown, Texas 78633 in Williamson County.

32. The RV Park construction site is within the Edwards Aquifer Contributing Zone. The nearest receiving waterbody is the North Fork San Gabriel River, segment 1251 of the Brazos River Basin.

33. JLM holds Stormwater Permit TXR1554FP, which was issued on June 7, 2021 and authorizes the discharge of stormwater from the RV Park construction site under the terms and conditions of the TCEQ's TPDES stormwater construction general permit TXR150000.

34. TCEQ's stormwater construction general permit requires JLM to maintain certain stormwater pollution prevention and control measures, including that JLM have prepared and implemented a stormwater pollution prevent plan ("SWP3") that is tailored to the RV Park construction site.

35. Because the RV Park construction site is located within the Edwards Aquifer Contributing Zone, TCEQ's stormwater construction general permit requires JLM to maintain an Edwards Aquifer Protection Plan ("EAPP") and to meet all applicable requirements of, and operate according to, 30 TAC Chapter 213, regarding the Edwards Aquifer.

36. Specifically, TCEQ's stormwater construction general permit requires JLM to design, install, and maintain effective erosion controls and sediment controls to minimize the discharge of pollutants (Part III, Section G), maintain all protective measured identified in the SWP3 in

effective operating condition (Part III, Section F.6(a)), and remove accumulations of sediment that escape the site (Part III, Section F.6(d)).

37.     Mr. Ragsdale owns several contiguous parcels, totaling approximately 73 acres, directly across County Road 289 to the west of the RV Park construction site. Stormwater drains off the RV Park construction site, across County Road 289, across Mr. Ragsdale's property, and into a tributary of the North Fork San Gabriel River.

38.     JLM's stormwater controls installed along the western boundary of the RV Park construction site have been ineffective at minimizing and preventing the large volumes of stormwater laden with sediment from running off the RV Park construction site and onto Mr. Ragsdale's property, as well as into adjacent stormwater culverts and trenches.

39.     Mr. Ragsdale has observed sediment laden stormwater leaving the RV Park construction site and being deposited on his property. Portions of Mr. Ragsdale's pastures have turned beige as a result of the sediment accumulating on his property. Mr. Ragsdale has observed a stock tank on his property becoming cloudy with sediment following rain events. That stock tank has partially filled with sediment and has developed a light-colored ring of sediment around the circumference that was not there prior to construction activity at the RV Park construction site.  When the stock pond overflows, the stormwater makes its way to a tributary to the North Fork San Gabriel River.

40.     According to TCEQ's public records, TCEQ received a complaint on July 12, 2021 and conducted an inspection of the RV Park construction site on August 18, 2021. A true and correct copy of a relevant excerpt of TCEQ's investigation report is attached as **Exhibit 2**. Included in TCEQ's investigation report were photos documenting evidence of prior sediment discharge from the silt fence on the NW corner of the construction site and excessive sedimentation accumulation on the silt fence on the NW corner of the construction site. A discharge of sediment-laden

stormwater was observed at the southwest corner of the construction site, and sediment erosion was noted on the west side of the project site, with erosion rills leading to the southwest corner of the site. The TCEQ concluded that there was evidence that a prior sediment discharge occurred in both the northwest and southwest corners of the job site, apparently caused by poorly maintained stormwater controls. These observations are consistent with what Mr. Ragsdale has observed for several months following rain events.

41. In a Summary of Investigation Findings, a true and correct copy of which is attached as **Exhibit 3**, TCEQ indicates that photographs submitted on September 2, 2021 show that maintenance had been performed on the silt fence and construction entrance on the western boundary of the construction site. However, Mr. Ragsdale has observed on several subsequent occasions following rain events, discharges of sediment-laden runoff from the RV Park construction site.

42. Sediment continues to accumulate on Mr. Ragsdale's property. None of the sediment accumulations on Mr. Ragsdale's property have been removed by JLM.

## VII. First Claim for Relief
### (Violations of Condition III(F)(6)(a))

43. Mr. Ragsdale incorporates each and every allegation set forth above.

44. JLM's permit requires that the permittee implement and maintain all required control measures relating to construction activities in effective working condition. Condition III, Part F.6(a). Silt fences installed along the perimeter, particulate the western boundary, of the RV Park construction site were ineffective and not maintained to be effective by JLM.

45. JLM violated Condition III, Part F.6(a) of their permit by failing to maintain control measures in effective working condition on dates known or knowable to it and, at least, on the following dates: June 27, 2021; July 5, 2021; July 19, 2021; and July 29, 2021.

46. Each violation is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402, 33 U.S.C. § 1342, of the CWA.

47. Neither the EPA nor the State of Texas is diligently prosecuting these permit violations.

48. JLM's violations constitute ongoing violations of the CWA. Based on the pattern of JLM's past permit violations, it is reasonably likely that JLM's violations will continue with the same frequency. JLM's violations are continuing at the time of the filing of this complaint and will continue to occur on significant rainfall events in the future.

49. JLM's continuing commission of the acts and omissions alleged in this complaint irreparably harms the waters of the United States in the North Fork San Gabriel River watershed, as well as Mr. Ragsdale and his property, for which he has no adequate remedy at law.

## VIII.   Second Claim for Relief
### (Violations of Condition III(F)(6)(d))

50. Mr. Ragsdale incorporates each and every allegation set forth above.

51. JLM's permit requires that the permittee remove accumulations of sediment and debris escaping the RV Park construction site. Condition III, Part F.6(d). Sediment from stormwater runoff from the RV Park construction site have accumulated on Mr. Ragsdale's property and continues to accumulate with every significant rainfall event.

52. JLM has failed to remove the accumulations of sediment beginning with the first instance of accumulation, and thus violated Condition III, Part F.6(d) of its permit on dates known or knowable to it and, at least every day beginning with June 27, 2021 to August 27, 2021.

53. Each violation is a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402, 33 U.S.C. § 1342, of the CWA.

54. Neither the EPA nor the State of Texas is diligently prosecuting these permit violations.

55. JLM's violations constitute ongoing violations of the CWA. Based on the pattern of JLM's past permit violations, it is reasonably likely that JLM's violations will continue with the same frequency. JLM's violations are continuing at the time of the filing of this complaint and will continue to occur on significant rainfall events in the future.

56. JLM's continuing commission of the acts and omissions alleged in this complaint irreparably harms the waters of the United States in the North Fork San Gabriel River watershed, as well as Mr. Ragsdale and his property, for which he has no adequate remedy at law.

### IX. Prayer for Relief

57. Mr. Ragsdale respectfully asks this Court to:

58. Issue a declaratory judgment stating that JLM has violated and is continuing to violate the Clean Water Act and the conditions of its TPDES permits with its recurring unpermitted discharges of polluted stormwater;

59. Grant appropriate injunctive relief to ensure that JLM prevents the recurring discharge of polluted stormwater and addresses the local environmental effects of its recurring discharges;

60. Retain jurisdiction over this matter until such time as JLM has come into compliance with the prohibitions, terms, and conditions of the CWA and the injunctive relief ordered by this Court;

61. Assess civil penalties against JLM of up to $56,460 per violation, per day for violations that occurred after November 2, 2015, as provided by 33 U.S.C. §§ 1319(d) and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. pt. 19;

62. Award Mr. Ragsdale his costs, including reasonable attorney's fees, as authorized under the CWA, 33 U.S.C. § 1365(d); and

63. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted on December 22, 2021.

By: */s/ Lauren Ice*
Lauren Ice
Texas Bar No. 24092560
lauren@txenvirolaw.com

**PERALES, ALLMON & ICE, P.C.**
1206 San Antonio St.
Austin, Texas 78701
Tel: (512) 469-6000
Fax: (512) 482-9346

*Attorney for Marvin Ragsdale*

## EXHIBITS

Exhibit 1 –   Plaintiff Marvin Ragsdale's Notice of Intent to Sue Letter (August 27, 2021).
Exhibit 2 –   Excerpt from TCEQ Investigation Report (October 6, 2021)
Exhibit 3 –   TCEQ Summary of Investigation Findings (October 7, 2021)